UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,                    Docket No. 10-Cr-0653 (GBD)

        Respondent.

   -against-

STEPHANIE SHEPARD,

        Petitioner-Defendant.
------------------------------------------------------X


<u>MEMORANDUM OF LAW IN SUPPORT OF STEPHANIE SHEPARD'S
MOTION TO VACATE SENTENCE</u>


                                                    Richard W. Levitt
                                                    LEVITT & KAIZER
                                                    40 Fulton Street, 23rd Floor
                                                    New York, New York 10038
                                                    (212) 480-4000
                                                    rlevitt@landklaw.com
                                                    *Attorneys for Stephanie Shepard*

## Table of Contents

Statement of Facts .................................................................................................... 3

    A.  The Trial Evidence ..................................................................................... 3

    B   Court's Instruction and Verdict Sheet......................................................... 6

    C.  Sentencing................................................................................................... 8

ARGUMENT

COUNSEL'S FAILURE TO ARGUE, TO BOTH THE DISTRICT COURT AND THE CIRCUIT COURT, THAT THE TEN-YEAR MANDATORY MINIMUM WAS NOT APPLICABLE, DEPRIVED PETITIONER OF EFFECTIVE ASSISTANCE OF COUNSEL ................................................................................. 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,               Docket No. 10-Cr-0653 (GBD)

                Respondent.

   -against-

STEPHANIE SHEPARD,

                Petitioner-Defendant.
------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE SENTENCE

     Petitioner Stephanie Shepard was convicted after a jury trial of conspiracy to distribute 1,000 kilograms or more of marijuana (21 U.S.C. § 841 (b)(1)(A) and 846), and sentenced on October 20, 2011, to the mandatory minimum ten years' imprisonment. Ms. Shepard moves, under 28 U.S.C. § 2255(a), to vacate her sentence on the ground that she was deprived of her Sixth Amendment right to effective assistance of counsel. Specifically, counsel failed to recognize and argue to the Court that Ms. Shepard was *not* subject to the mandatory minimum because the jury's affirmative response to the special interrogatory included on the verdict sheet did not establish that the distribution of more than 1,000 kilograms of marijuana was, as to her, a reasonably foreseeable object of the conspiracy.

1

The charges against Ms. Shepard arose from her sale of some quantity of marijuana for her ex-boyfriend, David Adams, the leader of an enterprise that was engaged in the distribution of large quantities of marijuana from January 2008 until December 2, 2009.[1]  Adams and several core members of his conspiracy were arrested on December 2, 2009.  Over 200 kilos of marijuana, nearly $400,000, and numerous cell phones, weapons, documents, heat sealers and money counters were seized from the vehicle in which Adams was arrested, his apartment and the storage facilities he rented.  Ms. Shepard was arrested nearly six months later, on May 26, 2010, for her part in the conspiracy.

There was no evidence that Ms. Shepard herself sold anywhere near 1,000 kilograms kilos of marijuana, and no evidence that she was involved in any way in the running of the operation.

The Court correctly instructed the jury that the government had to prove beyond a reasonable doubt both that the conspiracy involved a particular quantity of marijuana (roughly speaking, more than 1,000, 100 or 50 kilos) and that Ms. Shepard knew or could reasonably have foreseen that the conspiracy would distribute that quantity of marijuana.  Directly contradicting the Court's instruction, however, the special verdict form provided to the jury indicated that the jury need only find that "one of the objects of the conspiracy" was the distribution of 1,000

---

[1]     See Indictment of David Adams, et al., *United States v. McCade*, 10-cr-00082 (TPG).

2

kilos or more (or 100 or 50 kilos) of marijuana. The verdict form did not require the jury to find that either Ms. Shepard herself distributed, or that it was foreseeable to her that the conspiracy would distribute, 1,000 kilograms or more (or one of the other quantities) of marijuana. The jury's affirmative answer, therefore, was not a sufficient factual finding capable of implicating the ten-year mandatory minimum sentence that was imposed on Ms. Shepard. Counsel's failure to advise the Court of the deficiency of the jury's finding and the consequent inapplicability of the ten-year mandatory minimum or to argue on appeal that the sentence was unlawful deprived Ms. Shepard of effective assistance of counsel.

## Statement of Facts

This Court, having presided over Ms. Shepard's trial, is familiar with the facts of the case. We therefore provide here a condensed statement of the pertinent facts.

A. <u>The Trial Evidence</u>

David Adams, a/k/a "Conor," along with his co-conspirators Dente Ryan (a/k/a "Taz") and Trenton Gary (a/k/a "Bones"), sold marijuana in Seattle, Washington, from about 2001 through 2004 (Dente Ryan 290, 294, 496-97). Adams was arrested by the DEA in Seattle in 2005; he agreed to cooperate with the DEA by wearing a wire and was released, but tampered with the wire and fled to

Mexico and then Canada, where he dealt drugs with a Canadian cartel (Special Agent Christopher Quinn 199-202; Ryan 298).  Adams "showed up" in Brooklyn, New York, in 2006 (Quinn 202).

It was virtually uncontested that at some point Ms. Shepard, a real estate agent, began dating Adams, whom she and most others knew by the name Conor (295, 541, 703, 975, 1137), and that at some point, evidently shortly before July 4, 2007, she and Adams broke up (Ryan 317; David Montero 584-89).  Adams conferred the nickname "Crazy" on Ms. Shepard after their breakup when, on that July 4, she crashed a party he had thrown, breaking the windows in his van and threatening to tell the police that Adams was dealing marijuana (Montero 584-89). Nevertheless, after that incident, Adams and Ms. Shepard continued to have a platonic relationship.  Whether out of friendship or out of self-interested concern that Ms. Shepard would tell the police about his marijuana business, Adams helped her as she struggled financially in the real estate business, giving her a car and, for several months, sums of money (Ryan 317-18; Montero 595, 673).  Subsequently, instead of giving her money, Adams decided Ms. Shepard should go to work for him (319).

The government did not allege, and there was no evidence, that Ms. Shepard sold marijuana for Adams prior to October or November 2008 (Govt. summation 1170; Montero 609 (Adams reserved 50 pounds (roughly 22.7 kilos) of "purple

4

Kush" for Ms. Shepard in October or November 2008)). It also is not alleged, nor is there any evidence, that Ms. Shepard sold marijuana after Adams' arrest on December 2, 2009. The evidence suggested that Ms. Shepard herself sold far less than 1,000 kilos of marijuana and, in fact, the government argued in summation that the evidence showed Ms. Shepard sold about 160 kilograms (1178), and that the organization as a whole distributed "at least 1,807 kilograms" (1179-80).

There was no evidence that Ms. Shepard was involved with management of the operation (e.g., picking up, sorting, distributing, counting money or protection) or that she was aware of who or how many people purchased marijuana from Adams. The evidence established that Ms. Shepard had met Ryan, Montero and Brian Evins (Evins only once); there was no evidence that she ever met anyone else involved with Adams' organization. Ms. Shepard never met Kelly Campbell, one of Adams' main money counters, who was also responsible for sending large sums of money to suppliers (707, 727, 855-56, 861-64).

Ms. Shepard had moved to New York from Sacramento, California, where she grew up, around the end of 2005 (Karen Shepard-Watley 1130, 1134). Ms. Shepard's sister (Watley), her niece (Gabrielle Shepard), and her cousin (Pierre Tumlin) testified, *inter alia*, that when they lived or stayed with Ms. Shepard in New York at various times in 2007 and 2009, they saw no marijuana, no large sums of money, and no other evidence that suggested that she was involved in

5

selling drugs (Tumlin 947-58; G. Shepard 971-89; Watley 1130-38). Ms. Shepard was observed working at home or in her real estate office during their stays (955, 986, 1138). It was stipulated that Ms. Shepard was employed as a real estate agent with Developer's Group in Brooklyn from October 2007 until July 2009 (1129).

B. Court's Instruction and Verdict Sheet

After considerable discussion concerning the wording of the Court's jury instructions regarding quantity (1151-57), the Court instructed the jury that it must determine whether the government had proven beyond a reasonable doubt that Ms. Shepard became a member of and participated in the conspiracy with knowledge of its unlawful purpose and in furtherance of its unlawful objectives (1252-53), and that if it found the foregoing and, thus, found her guilty of conspiracy to distribute and possess with the intent to distribute marijuana, it must then decide "what quantity of marijuana the conspiracy she joined involved" (1256). The Court continued:

> If you find that defendant personally and directly participated in a jointly undertaken drug transaction, she is responsible for the full quantity of drugs involved in that transaction. You should also include any quantity of marijuana the conspiracy involved ***so long as that quantity was known to the defendant or reasonably foreseeable to her***, and within the scope of the criminal activity in which she knowingly and intentionally agreed to participate. You need not determine the precise quantity, instead, if you reach the question of quantity, indicate on the verdict form whether the government has established that the conspiracy involved either 1,000 kilograms or more of marijuana; 100 kilograms or more, but less than 1,000 kilograms of marijuana; 50 kilograms or more, but less than 100

6

      kilograms of marijuana; or less than 50 kilograms of marijuana.
           Your findings as to quantity must be made beyond a reasonable doubt. In addition, it must be unanimous in the sense that all of you must agree that the conspiracy involved either at least 1,000 kilograms of marijuana or at least 100 kilograms of marijuana, but less than 1,000 kilograms of marijuana or at least 50 kilograms of marijuana but less than 100 kilograms of marijuana, or it involved less than 50 kilograms of marijuana.

(1256-57) (emphasis added).

The verdict form submitted to the jury, with no objection from defense counsel or the government, contained four questions. The first question was "How do you find the defendant STEPHANIE SHEPARD with respect to conspiracy to distribute and possess with the intent to distribute marijuana?" followed by spaces for the jury to indicate either "GUILTY" or "NOT GUILTY" (*see* Verdict Form, annexed as Exhibit A). The form thereafter read "if your verdict is guilty, proceed to question #2, if not guilty proceed no further."

Question two on the verdict form read, "***Was one of the objects of that conspiracy the distribution of 1000 kilograms or more of marijuana***?" followed by spaces for the jury to indicate either "YES" or "NO" (*Id.*). Question three read, "***Was one of the objects of that conspiracy the distribution of 100 kilograms or more but less than 1000 kilograms of marijuana***?" followed by spaces for the jury to indicate either "YES" or "NO." Question four read, "***Was one of the objects of that conspiracy the distribution of 50 kilograms or more but less than 100 kilograms of marijuana***?" followed by spaces for the jury to indicate either "YES"

or "NO" (*Id.*) (emphasis added).  No further questions appeared on the verdict form, which ended with spaces for the signature of the foreperson and the date.

The jury found Ms. Shepard guilty of conspiracy to distribute and possess with the intent to distribute marijuana, and found, marking the appropriate space on the verdict form, that "one of the objects of that conspiracy [was] the distribution of 1000 kilograms or more of marijuana."

C. Sentencing

The Court, finding that Ms. Shepard was "convicted of a mandatory 10-year sentence" (S 21, 27), imposed a sentence of 10 years.

ARGUMENT

COUNSEL'S FAILURE TO ARGUE, TO BOTH THE DISTRICT COURT AND THE CIRCUIT COURT, THAT THE TEN-YEAR MANDATORY MINIMUM WAS NOT APPLICBLE, DEPRIVED PETITIONER OF EFFECTIVE ASSISTANCE OF COUNSEL

Second Circuit law holds that the weight of drugs required to impose the mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A), (B) and (C) is an element of the offense which must be found by the jury.  Equally clear is that a defendant may be held responsible for conspiring to distribute a quantity of drugs that implicates a mandatory minimum sentence only if she either distributed that quantity herself or if it was foreseeable to her that the distribution of such a quantity was an object of the conspiracy.  Here, the jury found only that an object

8

of the conspiracy was the distribution of more than 1,000 kilos of marijuana; it *did not* find that this object was foreseeable to Ms. Shepard. Thus, counsel should have argued both to this Court at sentencing and to the Court of Appeals that the jury's factual findings were insufficient to implicate the mandatory ten-year minimum.

To prevail on an ineffective assistance of counsel claim, a defendant must show (1) that his attorney's performance "fell below an objective standard of reasonableness" and (2) that there is a "reasonable probability" that, "but for the deficiency, the outcome of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The same standard applies to a review of the effectiveness of appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994), *cert. denied* 513 U.S. 820 (1994). An attorney's performance is objectively unreasonable if his errors or omissions "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude or laziness." *Cornell v. Kirkpatrick*, 665 F.3d 369, 377 (2d Cir. 2011) (quoting *Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003) (internal quotation marks omitted).

Conviction of a conspiracy to distribute drugs under 21 U.S.C. § 841(b)(1)(A) requires that a jury find the drug-quantity element. *United States v. Gonzalez*, 420 F.3d 111, 125 (2d Cir. 2005). "Our case law is clear that an

9

individual defendant in a drug conspiracy may only be held responsible, under 21 U.S.C. § 846, for the drug quantity which was reasonably foreseeable to that defendant." *United States v. Feliciano*, 26 Fed. Appx. 55, 58 (2d Cir. 2001) (citing *United States v. Martinez*, 987 F.2d 920, 925-26 (2d Cir. 1993)); *see United States v. Conon-Solis*, 354 F.3d 101, 103 (1st Cir. 2004). Accordingly, the jury must make a twofold finding: not only that the conspiracy as a whole was involved in the distribution of the quantity, but also that the co-conspirator defendant herself either knew of the quantity, or that the quantity was reasonably foreseeable to her. *Id*.

In *United States v. Wiggin*, 429 F.3d 31 (1st Cir. 2005), the court found proper both the challenged charge that "[t]he government must prove beyond a reasonable doubt both that the conspiracy involved a given amount of cocaine and that the defendant knew or could have reasonably foreseen that a conspiracy involved that amount of cocaine," and the verdict form, which "ma[de] clear that the jury was to make a separate finding *as to the amount attributable to the defendant*." *Id*. at 38 (emphasis added). It found that the instruction clearly and correctly stated the law, stressing that the reasonable doubt standard applied to both the amount involved in the conspiracy and the amount attributable to the defendant, *id*., and that the jury form reinforced rather than confused that principle

10

by "mak[ing] it clear that the jury was to make a separate finding as to the amount attributable to the defendant." *Id*. at 39.

The verdict form in this case was insufficient to implicate the mandatory minimum sentence. In addition to directing the jury to determine whether "one of the objects of that conspiracy" was the distribution of a given quantity of marijuana, it should have required the jury to make a separate finding of the amount attributable to the defendant, for example, "Did the defendant STEPHANIE SHEPARD know, or was it reasonably foreseeable to her" that an object of the conspiracy was to distribute a given quantity of marijuana? Defense counsel's failure to argue at sentencing or on appeal that the finding made by the jury was insufficient to implicate a mandatory minimum sentence could only have arisen from "oversight, carelessness, ineptitude." *Cornell*, 665 F.3d at 377.

A virtually identical issue was addressed recently in *United States v. Meregildo,* 11 cr 576 (WHP), which also involved drug conspiracy charges. During the charge conference, defense counsel objected to a special interrogatory that asked, "What amount of crack cocaine was involved in the narcotics conspiracy?" and said the interrogatory had to be consistent with the jury instruction to which it related, and that it should instead say "something like," "What amount of crack cocaine was each defendant either personally involved in or [was] reasonably foreseeable…" (*See* Exhibit B, Tr. 6331, annexed). The court

11

agreed, and so did the government, stating, "Your Honor, we agree. The language is in the charge so it's fine." *Id.* The court then submitted the following interrogatories to the jury with respect to the narcotics conspiracy charged in Count 13:

> If you find the defendant you are considering "Guilty" on Count Thirteen, then please answer Questions No. 13.1 and 13.2 for that defendant. If you find the defendant you are considering "Not Guilty" on Count Thirteen, please skip Questions No. 13.1, 13.2 and 13.3 for that defendant.
>
> 13.1 Did the defendant you found "Guilty" of Count Thirteen either have personal involvement with or was it reasonably foreseeable to him that the narcotics conspiracy involved marijuana? [Each defendant listed with blanks for "No" and "Yes."]
>
> For each defendant that you find "Guilty" of Count Thirteen and answered "Yes" to Question No. 13.2, check one box on Question No. 13.3. If you answered "No" to Question No. 13.2 for the defendant you are considering, please skip Question No. 13.3 for that defendant.
>
> 13.3 ***What amount of "crack" cocaine did the defendant you are considering either have personal involvement with or was reasonably foreseeable to him was involved in the narcotics conspiracy?*** [Each defendant listed with choices for "280 grams or more," "28 grams or more, but less than 280 grams," and "Less than 28 grams."]

(emphasis added).

Thus, all parties understood that the mandatory minimum sentence could be applied only to those defendants explicitly found by the jury to have had "personal involvement" with the required weight, or as to whom the distribution of the required weight was "reasonably foreseeable." No such finding was made in this case and, therefore, the mandatory minimum did not apply to Ms. Shepard. Given

12

the government's position in *Meregildo*, we respectfully suggest that the government would be hard-pressed to take a contrary position now.

The second prong of the *Strickland* analysis is satisfied as well because there is a reasonable probability that but for counsel's error, the result would have been different. *Strickland*, 466 U.S. at 693-94 (observing that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case;" rather, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."). After all, the Court imposed on Ms. Shepard the minimum sentence it believed was permissible; surely it is possible that the Court, if not hogtied by the mandatory minimum, would have imposed a lesser sentence on this young, first-time offender convicted of distributing marijuana.[2] *See Johnson v. United States*, 313 F.3d 815, 818 (2d Cir. 2002) (*per curiam*) (rejecting argument that court could have imposed the same sentence regardless of the Guidelines calculation and finding there was a "reasonable probability" that but for counsel's ineffectiveness in failing to object to the erroneous Guidelines calculation, the defendant would have received a lower sentence).

---

[2]   We note that the Justice Safety Valve Act of 2013 introduced March 30, 2013, by Sen. Patrick Leahy (D-VT) and Sen. Rand Paul (R-KY) would add subsection (g)(1) to 18 U.S.C. § 3553, as follows:

> (g)(1) GENERAL RULE - Notwithstanding any provision of law other than this subsection, the court may impose a sentence below a statutory minimum if the court finds that it is necessary to do so in order to avoid violating the requirements of subsection (a).

Thus, not only did counsel's performance in failing to object to the verdict sheet "fall below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, but additionally, were it not for counsel's error, there is a "reasonable probability" that the verdict and sentence would have been different. *Id*. at 694. As Ms. Shepard was deprived of her Sixth Amendment right to effective assistance of counsel, this Court should, pursuant to 28 U.S.C. § 2255, vacate Ms. Shepard's sentence. *See Johnson*, 313 F.3d 815.

Dated:  May 21, 2013

Respectfully submitted,

Richard Levitt
Levitt & Kaizer
40 Fulton Street, 23rd Floor
New York, New York  10038
(212) 480-4000
rlevitt@landklaw.com

On the brief:
Richard Levitt
Yvonne Shivers
Emily Golub